IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-806-D

THE UNITED STATES OF AMERICA, )
for the use of GRAYBAR ELECTRIC )
COMPANY, INC., )
)
               Plaintiff, )
)
               v. )               ORDER
)
TEAM CONSTRUCTION, LLC, )
JARROD CLINE, individually and )
d/b/a CLINE ELECTRIC, and )
WESTERN SURETY COMPANY, )
)
             Defendants. )

Defendants TEAM Construction, LLC ("TEAM") and Western Surety Company's ("Western") moved for partial summary judgment [D.E. 48], and plaintiff Jarrod Cline's ("Cline") moved to withdraw admissions under Rule 36(b) of the Federal Rules of Civil Procedure [D.E. 53]. As explained below, the court grants Cline's motion to withdraw his admissions and grants in part and denies in part TEAM and Western's motion for partial summary judgment.

I.

TEAM is a general contractor in Jacksonville, North Carolina. TEAM's Stmt. Material Facts [D.E. 50] ¶ 1; Cline's Stmt. Material Facts [D.E. 54] ¶ 1. The Department of the Navy contracted with TEAM to serve as the general contractor to perform renovations, construction, and improvements on a project. TEAM's Stmt. Material Facts ¶¶ 5–6; Cline's Stmt. Material Facts ¶¶ 5–6. In turn, TEAM contracted with Jarrod Cline ("Cline") to act as a subcontractor for TEAM. TEAM's Stmt. Material Facts ¶¶ 7–8; Cline's Stmt. Material Facts ¶¶ 7–8. Cline conducts business under the name of Cline Electric and provides electrical-related services as an electrical contractor. TEAM's Stmt. Material Facts ¶¶ 3–4; Cline's Stmt. Material Facts ¶¶ 3–4. For the electrical

supplies, TEAM and Cline contracted with Graybar Electric Company, Inc. ("Graybar"). Compl. [D.E. 1] ¶¶ 8, 10, 20; Cline's Ans. [D.E. 14] ¶¶ 8, 10, 20; TEAM's Ans. [D.E. 16] ¶¶ 8, 10, 20. Western Surety Company ("Western") issued a bond ensuring payment by TEAM and its subcontractors of claims by persons furnishing labor and materials for the project. Compl. ¶ 7; Cline's Ans. ¶ 7; TEAM's Ans. ¶ 7.

On November 12, 2014, Graybar sued TEAM, Western, and Cline to recover money owed for electrical-related materials it provided for the project. See [D.E. 1]. TEAM answered the complaint and asserted crossclaims against Cline for breach of contract, fraud, breach of express warranty, breach of implied warranty, and contractual indemnification. See [D.E. 14] 12–26. Cline answered the complaint, [D.E. 12], answered TEAM's crossclaim, and asserted his own crossclaims against TEAM for breach of contract, fraud, and quantum meruit and against both TEAM and Western for violations of the Miller Act. See [D.E. 16].

On August 28, 2015, Graybar, TEAM, and Western jointly moved to dismiss Graybar's claims against TEAM, Western, and Cline [D.E. 27]. On September 3, 2015, the court granted the motion, leaving just TEAM's and Cline's crossclaims. See [D.E. 29].

On March 31, 2015, the court entered a scheduling order requiring the parties to complete discovery by December 30, 2015, and file dispositive motions by January 29, 2016 [D.E. 21]. On July 21, 2015, Cline's attorney moved to withdraw [D.E. 24]. On August 24, 2015, the court granted the motion [D.E. 26]. In the order, the court stated:

> All pleadings and correspondence for Defendant Jarrod Cline, individually and d/b/a Cline Electric shall be addressed as 214 Cedar Lane, Newport, NC 28570, unless another address is provided by Defendant Jarrod Cline, individually and d/b/a Cline Electric.

Id. at 2.

On November 25, 2015—with a little more than a month remaining in the discovery period—TEAM served interrogatories and requests for production of documents on Cline at the address listed in the court's order. See 2d Stanfield Aff. [D.E. 55-1] ¶ 3. On November 30, 2015,

2

TEAM served request for admissions on Cline at the address listed in the court's order. See id.; TEAM's Reqs. for Admis. [D.E. 51-2]. The request for admissions stated, in part, "The Admissions are to be fully answered, under oath, in writing within thirty (30) days afer service in accordance with Rules 26 and 36 of the Federal Rules of Civil Procedure." TEAM's Reqs. for Admis. at 2.

On December 8, 2015, TEAM's attorney received a voicemail from Jeffrey S. Jonap, an attorney who said Cline had contacted him and that he intended to represent Cline in this action. 2d Stanfield Aff. ¶ 4. Although TEAM does not elaborate on the voicemail, TEAM does say that Jonap did not inquire about any written discovery requests sent to Cline. Id.

On December 30, 2015, TEAM's counsel and Jonap—who had not yet filed a notice of appearance as Cline's attorney—discussed changes to a consent order. See id. ¶ 6. Among the changes, Jonap inserted an address for Cline in Kentucky. Id. Upon seeing the change, TEAM's counsel called Jonap and informed him that Cline's address of record with the court listed a mailing address in Newport, North Carolina. Id. TEAM's counsel also told Jonap that the court's earlier order required all filings to be served on Cline at the Newport, North Carolina address. Id. Neither Cline nor Jonap contacted the court to change Cline's address. Id. Moreover, TEAM's attorney did not mention that TEAM had sent discovery requests to Cline's North Carolina address.

Cline did not timely respond to the interrogatories, requests for documents, or the request for admissions. TEAM never moved to compel responses. On January 29, 2016, TEAM and Western moved for partial summary judgment based largely on the facts deemed admitted due to Cline's failure to respond to the request for admissions. See [D.E. 37].

On April 27, 2016, the parties attended a court-ordered mediation. See Stanfield Aff. ¶ 9. Jonap and another attorney, neither of whom had filed a notice of appearance, accompanied Cline and presented his case. Id. The attorneys did not discuss any outstanding discovery requests. See id.

On May 9, 2016, the court docketed a letter from Jonap dated May 5, 2016, "to serve as an

3

address change" for Cline. [D.E. 42]. The letter changed Cline's address to one in Kentucky. Id.

On June 2, 2016, attorney Davies filed a notice of appearance for Cline [D.E. 43]. That same day, Cline (through Davies) moved for leave to file an opposition to TEAM and Western's motion for summary judgment and to withdraw Cline's deemed admissions under Federal Rule of Civil Procedure 36(b) [D.E. 44]. TEAM had sent the summary-judgment motion to Cline's North Carolina address, as required by the court's earlier order, but Cline had moved and not updated his address with the court. See id. ¶ 4. Although other items sent from TEAM to Cline had been forwarded to Cline's new address, the summary-judgment motion and request for admissions were not. See id. ¶ 5. Cline was unaware of the existence of the summary-judgment motion and request for admissions until approximately May 12, 2016. See id. ¶¶ 5, 7.[1] TEAM and Western would not consent to Cline filing a response to the motion. See id. ¶ 6. Cline requested leave to file a response to the summary-judgment motion and for 14 days within which to respond to the request for admissions. See id. ¶¶ 6–7.

On September 20, 2016, the court dismissed TEAM and Western's motion for summary judgment without prejudice for failure to conform with Local Civil Rule 56.1 [D.E. 47]. The court denied as moot Cline's motion for leave to file a response in opposition, but did not separately address his request to withdraw his admissions. Id.

On October 3, 2016, TEAM and Western refiled their motion for summary judgment [D.E. 48], along with a supporting memorandum [D.E. 49], a statement of material facts [D.E. 50], and an appendix [D.E. 51]. On October 27, 2016, Cline moved under Rule 36(b) to withdraw his admissions [D.E. 53]. Cline asks the court to allow him withdraw his admissions and to give him 14 days to respond to TEAM's request for admissions. Cline's motion also responds in opposition to TEAM and Western's summary-judgment motion. See id.

---

[1] Cline does not say how he learned that TEAM had mailed these documents to his old North Carolina address.

4

II.

Because Cline's admissions feature prominently in TEAM and Western's summary-judgment motion, the court first considers Cline's motion to withdraw his admissions. When a party receives a request for admissions, a matter is admitted "unless, within 30 days after being served," that party "serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "The purpose of such admissions is to narrow the array of issues before the court, and thus expedite both the discovery process and the resolution of the litigation." Adventis, Inc. v. Consol. Prop. Holdings, Inc., 124 F. App'x 169, 172 (4th Cir. 2005) (unpublished).

Once admitted under Rule 36(a), the matter "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended" under Rule 36(b). Fed. R. Civ. P. 36(b). Rule 36(b) contains a two-part test concerning the withdrawal or amendment of an admission. It states:

> [T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

Id.; see Adventis, Inc., 124 F. App'x at 173; In re Carney, 258 F.3d 415, 419 (5th Cir. 2001). "[M]ore than a failure to meet deadlines is required to deny a party relief from an admission." Raiser v. Utah Cty., 409 F.3d 1243, 1247 (10th Cir. 2005). Rather, the "court's focus must be on the 'effect upon the litigation and prejudice to the resisting party rather than on the moving party's excuses for an erroneous omission.'" In re Durability Inc., 212 F.3d 551, 556 (10th Cir. 2000) (quoting Fed. Deposit Ins. Corp. v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994)).

Rule 36(b) does not require a district court to grant relief when the two-part test is satisfied. See Conlon v. United States, 474 F.3d 616, 624–25 (9th Cir. 2007) (collecting cases); In re Carney, 258 F.3d at 419. Instead, that decision is left to the district court's discretion.

5

A.

"The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." Conlon, 474 F.3d at 622 (quotation omitted); see Perez v. Miami-Dade Cty., 297 F.3d 1255, 1266 (11th Cir. 2002); Prusia, 18 F.3d at 640. Here, the facts admitted effectively ended the litigation. Several of Cline's admissions conclusively establish Cline's liability for TEAM's breach-of-contract claim. See, e.g., TEAM's Reqs. for Admis. [D.E. 51-2] ¶¶ 6–19. Other admissions conclusively established TEAM's nonliability for Cline's crossclaims. See, e.g., id. ¶¶ 22–23, 29–54. These admissions "are conclusive for purposes of the litigation," and "the conclusive effect of admissions applies even if the matters admitted relate to material facts that defeat a party's claim." Adventis, Inc., 124 F. App'x at 173. Admitting these facts "took the wind out of [Cline's] sails and effectively ended the litigation." Perez, 297 F.3d at 1266. Because upholding the deemed admissions would eliminate any need for a presentation on the merits, Cline satisfies the first prong of Rule 36(b). See Conlon, 474 F.3d at 622; Perez, 297 F.3d at 1266; Prusia, 18 F.3d at 640.

B.

"The party relying on the deemed admission has the burden of proving prejudice." Conlon, 474 F.3d at 622; see Prusia, 18 F.3d at 640. As several courts of appeals have said,

> The prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted.

Conlon, 474 F.3d at 622 (quotation omitted); see Raiser, 409 F.3d at 1246; Perez, 297 F.3d at 1266 Prusia, 18 F.3d at 640. Without more, "reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice." Conlon, 474 F.3d at 624; see Raiser, 409 F.3d at 1246; Prusia, 18 F.3d at 640.

6

TEAM and Western argue that withdrawing Cline's admissions would require TEAM and Western to obtain new evidence. In support, TEAM and Western note that they did not obtain other evidence from Cline during the discovery period, and Cline never responded to TEAM's interrogatories or requests for documents. According to TEAM, TEAM did not move to compel a response to the unanswered discovery because doing so was unnecessary. TEAM believed it could rely on Cline's admissions. Thus, withdrawing the admissions would force TEAM and Western to "abruptly need to obtain new evidence from Cline to prove their case with respect to the matters previously answered by the Admissions." [D.E. 55] 12. TEAM and Western also argue that they cannot depose Cline or others, or compel responses to the unanswered interrogatories and document requests, because the discovery period closed 11 (now 19) months ago.

The Ninth Circuit has addressed this argument, stating that although the party opposing withdrawal had

> relied on the deemed admissions in choosing not to engage in any other discovery, we are reluctant to conclude that a lack of discovery, without more, constitutes prejudice. The district court could have reopened the discovery period, and prejudice must relate to the difficulty a party may face in proving its case at trial.

Conlon, 474 F.3d at 624 (citations omitted). The Eleventh Circuit used similar reasoning, holding that

> at the time the defendants requested the withdrawal, a trial on the merits had not yet begun; the district court could have simply extended the discovery deadlines—as it previously had done—to enable [the party relying on the admissions] to prove his case. The only prejudice [the party relying on the admissions] would have likely suffered would have been the inconvenience in having to gather evidence, and this does not rise to a level of prejudice that justifies a denial of the withdrawal motion.

Perez, 297 F.3d at 1268 (quotation and alterations omitted); see Gwynn v. City of Philadelphia, 719 F.3d 295, 299 (3d Cir. 2013) (the party relying on the admissions "argued that counsel had not moved to compel discovery of certain documents in reliance on the admissions—a concern that was adequately addressed by the extension of the discovery deadline"); Taylor v. McGill Envtl. Sys. of N.C., Inc., No. 7:13-CV-00270-D, 2015 WL 1125108, at *3 (E.D.N.C. Mar. 12, 2015) (unpublished)

("Further, the fact that Defendant may need to conduct discovery on the matter is not sufficient to show prejudice.").

In Perez, the Eleventh Circuit concluded that the district court abused its discretion in denying the motion to withdraw. In Conlon, the Ninth Circuit held otherwise because the "case involve[d] more than a mere failure to comply with the deadlines" and included an impending trial date, although "the issue [was] close." Conlon, 474 F.3d at 624. TEAM and Western rely on Conlon, and note that the party in Conlon "relied on the admissions for a total of two and a half months, through the discovery and dispositive motion cut-off dates, with no indication that [the party seeking withdrawal] intended to file a motion to withdraw his admissions." Conlon, 474 F.3d at 624. As in Conlon, TEAM and Western argue that they relied on the admissions through the close of discovery on December 30, 2015, and the cut-off date for filing dispositive motions on January 29, 2016, when they filed their first motion for summary judgment. TEAM and Western also note that they first learned of Cline's intention to seek to withdraw the admissions on June 2, 2016, when he filed his motion under Rule 36(b).

Conlon does not help TEAM and Western. First, unlike in Conlon, throughout the relevant time period Cline proceeded pro se. Second, unlike in Conlon, Cline was unaware that the requests had been sent. Third, unlike in Conlon, no trial date has been set. Thus, TEAM and Western's argument that they did not engage in other discovery because they relied on the admissions does not demonstrate prejudice.

C.

Withdrawal under Rule 36(b) is permissive. Although the Rule's requirements are satisfied, Rule 36(b) does not require the court to grant the motion to withdraw. See Conlon, 474 F.3d at 624–25.

As for Cline, he could have avoided this situation by promptly notifying the court of his new address. Had he done so, TEAM would have sent the requests to the new address, preventing the

8

risk that Cline's mail would not get forwarded from Cline's old address to his new one. Nonetheless, the current situation appears to be the result of Cline's good-faith mistake in failing to update his mailing address. Moreover, once Cline and his counsel learned of the unanswered request for admissions, they moved to withdraw the admissions.

As for TEAM and Western, the record reveals a discovery strategy to take advantage of Cline's pro se status. On March 31, 2015, the court entered its scheduling order directing the parties to complete discovery by December 30, 2015. On August 24, 2015, the court granted Cline's attorney's motion to withdraw, putting TEAM on notice that Cline was proceeding pro se. Although TEAM had nine months to do so, it waited until November 25, 2015—roughly one month before the discovery period closed—before serving its discovery requests on Cline, a pro se litigant. TEAM waited another five days before serving the request for admissions. Thus, Cline's discovery responses essentially were due at the expiration of the discovery period and during the holiday season. Moreover, in his answer to TEAM's crossclaims against him—an answer drafted with the benefit of counsel—Cline denied the same essential facts TEAM belatedly asked Cline to admit. Compare TEAM's Crossclaim [D.E. 14] 17 (¶¶ 26–31, 39–40, 45–48), and Cline's Ans. [D.E. 16] ¶¶ 26–31, 39–40, 45–48, with TEAM's Reqs. for Admis. [D.E. 51-2] ¶¶ 5–18. The request for admissions also asked Cline to disavow the factual bases for his own crossclaims. Compare Cline's Crossclaims [D.E. 16] 20 (¶¶ 28, 31, 36–38, 44–46, 48–51), with TEAM's Reqs. for. Admis. [D.E. 51-2] ¶¶ 20–21, 23, 32–54.

Courts are "reluctant to use Rule 36 procedures as a snare for [an] unwary pro se [litigant]." United States v. Turk, 139 F.R.D. 615, 618 (D. Md. 1991); see United States v. Renfrow, 612 F. Supp. 2d 677, 682 (E.D.N.C. 2009) ("Federal Rule of Civil Procedure 36 was not intended to be used as a technical weapon to defeat the rights of pro se litigants to have their cases fairly judged on the merits." (quotation omitted)). Compounding the effect of Cline's pro se status is the timing of TEAM's discovery requests. TEAM served its discovery requests after Cline was appearing pro se

9

and near the very end of the discovery period. See Schendzielos v. Borenstein, No. 15-CV-00564-RBJ, 2016 WL 614473, at *5 (D. Colo. Feb. 16, 2016) (unpublished) ("It is worth noting that plaintiff served the RFAs on defendants just over a month before the discovery cut-off date of October 2, 2015. This left only a matter of days to complete discovery following the expiration of the 30-day window for defendants to file their response.").

This court declines to permit TEAM and Western to rely on Cline's admissions. First, the admissions directly contradict Cline's contentions in his crossclaims and answer, which he filed with the benefit of counsel. As the Eleventh Circuit stated,

> We conclude with a comment on Rule 36 and Perez's use of requests for admissions in this case. Essentially, Rule 36 is a time-saver, designed "to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial." 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2252 (2d ed.1994) (emphasis added). That is, when a party uses the rule to establish uncontested facts and to narrow the issues for trial, then the rule functions properly. When a party like Perez, however, uses the rule to harass the other side or, as in this case, <u>with the wild-eyed hope that the other side will fail to answer and therefore admit essential elements (that the party has already denied in its answer)</u>, the rule's time-saving function ceases; the rule instead becomes a weapon, dragging out the litigation and wasting valuable resources.

Perez, 297 F.3d at 1268 (emphasis added and omitted); see id. at 1268–69; Bergemann v. United States, 820 F.2d 1117, 1121 (10th Cir. 1987); Schendzielos, 2016 WL 614473, at *5 ("As the admissions in question go to the central elements of the claim, this is not the type of situation where a plaintiff could be surprised to suddenly encounter significant difficulty in proving his case at trial."); McClanahan v. Aetna Life Ins. Co., 144 F.R.D. 316, 320 (W.D. Va. 1992). Moreover, TEAM never moved to compel responses to its discovery requests, including the request for admissions. See Schendzielos, 2016 WL 614473, at *5 ("[Plaintiff] also had the option of moving to reopen discovery or seeking the involvement of the Court in resolving these discovery disputes."); Jones v. Jack Henry & Assocs., Inc., No. 3:06CV428, 2007 WL 4226083, at *2 (W.D.N.C. Nov. 30, 2007) (unpublished) ("Further, the Defendant never moved to compel the Plaintiff's response or to have these matters deemed admitted prior to filing this summary judgment motion."). Had TEAM

10

done so, this court could have addressed the discovery issues shortly after the close of discovery.

Cline's pro se status, TEAM's eleventh-hour request for admissions, TEAM's request to Cline to admit matters CLINE already explicitly denied in his answer, and TEAM's failure to seek responses to its discovery requests, support granting Cline's motion. Thus, the court grants Cline's motion to withdraw his admissions. Cline shall respond to TEAM's request for admissions, interrogatories, and requests for production of documents not later than October 13, 2017. In order to mitigate any potential prejudice, the parties each may conduct two additional depositions. All such depositions shall be completed by October 31, 2017.

### III.

The court now addresses TEAM and Western's motion for partial summary judgment without considering Cline's withdrawn admissions. See, e.g., Kress v. Food Emps. Labor Relations Ass'n, 285 F. Supp. 2d 678, 681 (D. Md. 2003) (ruling on the summary-judgment motion as if the withdrawn admissions were never made), aff'd, 391 F.3d 563 (4th Cir. 2004). TEAM moves for summary judgment on its crossclaim for breach of contract and on Cline's crossclaims for breach-of-contract, fraud, and quantum meruit. Western joins TEAM in moving for summary judgment on Cline's Miller Act crossclaim.

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of a genuine dispute of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477

11

U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587–88.

A.

TEAM and Cline entered into a written contract (the "subcontract") for Cline to act as a subcontractor for TEAM on the project. TEAM's Stmt. Material Facts ¶¶ 7–8; Cline's Stmt. Material Facts ¶¶ 7–8. Under the subcontract's General Provisions, Cline agreed to promptly correct all latent defects, [D.E. 14-1] ¶ 2.74, size his workforce to meet the work schedule, id. ¶ 3.2, proceed with the work in an uninterrupted manner, id., complete 100 percent of invoiced work before submitting the invoice, id. ¶ 5.2, personally supervise the work done on the jobsite, or have a foreman or superintendent do so, id. ¶ 2.4, and warrant his work against all deficiencies and defects in materials and/or workmanship, id. ¶ 2.7. The subcontract's Special Provisions required Cline to furnish all material, labor, equipment, tools, supplies, and supervision associated with the electrical, fire alarm, and communications for the project, id. at 13 ¶ 1.a., complete his work to meet TEAM's schedule, id. at 14 ¶ 1.I, complete his work as directed by TEAM, id. ¶ 3.a., and complete his work on or before the work schedule provided by TEAM, id. at 5 ¶ 4.a.

TEAM contends that Cline breached the subcontract and caused delays on the project. Cline allegedly used improper workmanship, improperly supervised his employees and subcontractors, did not have a sufficiently sized workforce to accomplish his tasks, failed to detect errors and defects in his work, and did not timely or properly perform his work. See Leifheit Aff. ¶ 8. After TEAM notified Cline of these deficiencies, "Cline did not correct the deficiencies with his work, he refused

12

to increase the size of his crews, and he did not correct his supervision of his crews on the Project." Id. ¶ 12. Cline also submitted invoices "for work that Cline performed incorrectly or for work and materials that Cline did not perform at all," "did not fully pay his subcontractors and materials suppliers," and "abandoned his work and walked off the Project, without cause." Id. ¶¶ 12, 14.

In its statement of material facts, TEAM asserts that these facts are undisputed by citing admissions of Cline's that accord with Leifheit's affidavit testimony. See TEAM's Stmt. Material Facts ¶¶ 14, 20, 24–25, 28–30. In his responsive statement of material facts, Cline denies these assertions. Without Cline's admissions, TEAM cannot carry its burden of showing the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law as to Cline's alleged breach of the subcontract. Thus, the court denies summary judgment on this crossclaim.

B.

Cline asserts his own crossclaim against TEAM for breaching the subcontract. TEAM allegedly breached the subcontract by failing to pay one of Cline's invoices, wrongfully and fraudulently terminating the subcontract, and converting Cline's and his employees' equipment and supplies. See Cline's Crossclaim [D.E. 16] ¶¶ 19.a, 28a.–c. TEAM seeks summary judgment on this crossclaim and relies exclusively on Cline's admissions to establish that no genuine dispute of material fact exists concerning TEAM's alleged breach. See TEAM's Reqs. for. Admis. [D.E. 51-2] ¶¶ 22, 29–42, 47; TEAM's Stmt. Material Facts ¶ 38. Without Cline's admissions, TEAM cannot carry its burden. See [D.E. 49] 18–19. Thus, the court denies summary judgment on this crossclaim.

C.

Cline contends that TEAM committed fraud in several ways: maliciously barring Cline from the jobsite, maliciously terminating the subcontract with Cline, making false representations that Cline was behind schedule in completing of his contractual obligations, and making false representations that Cline failed to have sufficient staffing to complete required work on the subcontract. See [D.E. 16] ¶¶ 32–40. However, even if TEAM took these actions, they do not

13

support Cline's fraud crossclaim. "Ordinarily, an action in tort must be grounded on a violation of a duty imposed by operation of law, and the right invaded must be one that the law provides without regard to the contractual relationship of the parties, rather than one based on an agreement between the parties." Asheville Contracting Co. v. City of Wilson, 62 N.C. App. 329, 342, 303 S.E.2d 365, 373 (1983).[2] To the extent TEAM owed Cline duties not to take these actions, those duties arose under the subcontract, "not by operation of law independent of the contract, and the asserted breach of such duty by [TEAM] does not give rise to an action in tort." Id. Thus, the fraud crossclaim fails.

Alternatively, Cline abandoned these actions as sources of his fraud crossclaim, asserting instead that he premises his fraud claims on alleged misrepresentations TEAM's project and operation managers made to the effect that Cline was behind schedule and failed to provide adequate staffing. See [D.E. 53] 10.[3] To succeed on a fraud claim, the plaintiff must prove "(1) [a] [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party," where "any reliance on the allegedly false representations must be reasonable." Forbis v. Neal, 361 N.C. 519, 526–27, 649 S.E.2d 382, 387 (2007). Other than emails demonstrating that TEAM made statements about being disappointed in Cline's performance, Cline cites no evidence creating a genuine issue of material fact as to fraud. Cline's "[c]onclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment." Matherly v. Andrews, 859

---

[2] In exercising supplemental jurisdiction over TEAM's state-law claims, the court applies North Carolina substantive law. See Johnson v. Hugo's Skateway, 974 F.2d 1408, 1416 n.7 (4th Cir. 1992); Soliman v. Worldwide Language Res., Inc., No. 5:16-CV-748-D, 2016 WL 7494858, at *4 (E.D.N.C. Dec. 29, 2016) (unpublished).

[3] In his opposition brief, Cline also asserts that he bases his fraud crossclaim on statements to the effect that Cline "was closing his doors and was bankrupt, and that he walked off the project." [D.E. 53] 10. Cline did not assert these theories of fraud when pleading his crossclaim. See [D.E. 16] ¶¶ 32–40. Cline cannot amend his complaint via summary-judgment briefing. See, e.g., Gilbert v. Deutsche Bank Tr. Co. Americas, No. 4:09-CV-181-D, 2017 WL 1012981, at *2 n.2 (E.D.N.C. Mar. 14, 2017) (unpublished); Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *7 (E.D.N.C. Sept. 28, 2011) (unpublished).

F.3d 264, 280 (4th Cir. 2017) (quotation omitted). Thus, even without the admissions, the court grants TEAM summary judgment on Cline's fraud crossclaim.

D.

Cline asserts a Miller Act crossclaim. The Miller Act gives "every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished" the right to "bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought." 40 U.S.C. § 3133(b)(1). To prevail on a Miller Act claim, the supplier must prove that: "(1) the materials were supplied in prosecution of the work provided for in the contract; (2) the supplier has not been paid; (3) the supplier had a good faith belief that the materials were intended for the specified work; and (4) the jurisdictional requisites were met." U.S. for Use & Benefit of Hawaiian Rock Prod. Corp. v. A.E. Lopez Enterprises, Ltd., 74 F.3d 972, 975 (9th Cir. 1996); see U.S. for Use & Ben. of E. Gulf, Inc. v. Metzger Towing, Inc., 910 F.2d 775, 783 (11th Cir. 1990).

TEAM and Western contend that Cline cannot prove the second element of his Miller Act crossclaim. In support, they rely on Cline's admissions that TEAM paid him in full and that he waived and released any rights, demands, and claims against TEAM and Western. See TEAM's Reqs. for Admis. ¶¶ 20–23. TEAM's Stmt. Material Facts ¶ 38.c–e.; [D.E. 49] 22–23. In his responsive statement of material facts, Cline denied these assertions. See Cline's Stmt. Material Facts ¶ 38. Without Cline's admissions, TEAM and Western do not carry their burden of demonstrating the absence of a genuine dispute of a material fact. Thus, the court denies summary judgment on Cline's Miller Act crossclaim.

E.

Cline's final crossclaim alleges he has not been paid for services and goods provided to TEAM and that failure to compensate him will unjustly enrich TEAM. See [D.E. 16] ¶¶ 48–51. Absent "an express contract, a plaintiff may recover in quantum meruit on an implied contract theory

for the reasonable value of services and materials rendered to and accepted by a defendant." Catoe v. Helms Const. & Concrete Co., 91 N.C. App. 492, 497, 372 S.E.2d 331, 335 (1988). Under North Carolina law, "there can be no recovery for breach of implied contract when an express contract covers the same subject matter." Id. at 497, 372 S.E.2d at 335. The parties entered into the subcontract, agree it governed their relationship, and do not dispute its enforceability. See TEAM's Stmt. Material Facts ¶¶ 7–13; Cline's Stmt. Material Facts ¶¶ 7–13. Cline admits he pleaded his quantum meruit claim as an alternative to his breach-of-contract crossclaim in case the court concluded that the subcontract was unenforceable. See [D.E. 53] 11–12. Thus, even without the admissions, the court grants TEAM summary judgment on this crossclaim.

## IV.

In sum, the court GRANTS Cline's motion to withdraw his admissions [D.E. 53] and GRANTS IN PART and DENIES IN PART TEAM and Western's motion for partial summary judgment [D.E. 48]. Cline shall respond to TEAM's request for admissions, interrogatories, and request for production of documents not later than October 13, 2017. The parties each may conduct two additional depositions. All such depositions shall be completed by October 31, 2017. Finally, the parties shall confer and submit not later than October 31, 2017, proposed trial dates for December 2017 or January 2018, and the submission shall estimate the number of trial days needed.

SO ORDERED. This _21_ day of September 2017.

JAMES C. DEVER III
Chief United States District Judge